DAVID E. BUCKNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buckner v. Commissioner
Docket No. 6951-92
United States Tax Court
T.C. Memo 1994-376; 1994 Tax Ct. Memo LEXIS 385; 68 T.C.M. (CCH) 352; August 9, 1994, Filed *385 Decision will be entered under Rule 155. For petitioner: Kirk A. McCarville. For respondent: Andrew J. Gottlieb. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Sec.
Sec.
Sec.
Sec. Sec. Year
Deficiency
6653(a)(1)(A) [1]
6653(a)(1)
6651(a)(1)
6661
6662(a)
1987
$ 9,762
$ 488
--
$ 881
$ 2,441
--
1988
18,044
--
$ 902
2,425
4,511
--
1989
8,196
--
--
--
--
$ 1,639
After concessions by petitioner, the issues remaining for decision are: (1) Whether petitioner had an actual and honest profit objective when he engaged in farming activities, the losses from which were reported on Schedule F of his tax returns for the years in issue; (2) whether petitioner is liable for additions to tax for negligence for 1987 and 1988, pursuant to section 6653(a)(1), and for 1989, pursuant to section 6662(a); (3) whether petitioner is liable for additions to tax for late filing pursuant to section 6651(a)(1) for 1987 *386 and 1988; and (4) whether petitioner is liable for additions to tax for substantial understatement for 1987 and 1988 pursuant to section 6661. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in San Francisco, California, at the time the petition in this case was filed. Petitioner filed his 1987 and 1988 returns on November 13, 1989, and December 5, 1989, respectively. Petitioner was born in 1941. Petitioner's parents owned a farm on which petitioner lived intermittently during his childhood. When petitioner was around age 20, he left his parents' home to begin training as a pilot. In 1966, Flying Tigers hired petitioner. He worked as a first officer, then was promoted to cargo pilot. Federal Express bought out Flying Tigers in 1989, and petitioner continued in his position as cargo pilot. Petitioner retired from Federal Express in June *387 1993 on medical disability. During the years in issue, petitioner earned the following annual salaries as a pilot: Year
Salary
1987
$ 93,329
1988
107,558
1989
162,510
Petitioner's home base was John F. Kennedy International Airport in New York City. In June 1983, petitioner purchased an 80-acre farm in Wolcottville, Indiana, approximately 3 miles from the farm owned by his parents. Approximately 55 of the 80 acres were suitable for planting crops. However, much of those 55 acres was severely eroded. In 1988, petitioner entered 45.1 of the acres suitable for farming into the Agricultural Stabilization and Conservation Service (ASCS) program. [1] ASCS paid petitioner $ 65 per acre for entering his land into the program. During the years in issue, petitioner resided on his farm when he was not flying. He spent nearly as much time farming as he did flying. *388 Petitioner's flying activities consumed approximately 85 hours per month. Typically, petitioner's flying activities required him to be absent from his farm for periods of a week or more. Petitioner tried to arrange his flight schedule in order that he could spend 2 weeks at a time on his farm. Petitioner purchased approximately $ 180,000 worth of farm equipment, including four tractors, a field cultivator, a disk, a spring tooth harrow, a chisel plow, a four bottom plow, and a cultivator. He purchased large pieces of farm equipment so that he could accomplish as much work as possible while on his farm. Petitioner attempted to grow corn. Petitioner had no formal training in farming. He did not seek advice from farming professionals. Rather, he based his choice of crops on what the previous owners of his farm had grown, and on what was grown in the area. He attempted to use less harmful chemicals than his predecessors but was unable to control weeds. He consulted local grain elevator operators about his weed problems, and hired them to spray herbicides. He also rotated his crops. Because he was aware of the soil erosion problem, petitioner employed new farming techniques, *389 including "no till" machinery, to prevent further erosion of the soil. He read farming materials, conducted soil tests, and followed the advice he received from the testing centers. Petitioner did not maintain a separate bank account, ledger, or other bookkeeping records with respect to his farming activities. Petitioner's farming endeavor resulted in losses during each of the years in issue which were reported on Schedule F of his returns as follows: 1987 1988 1989 Gross Receipts [1]
$ 3,855
$ 2,932
$ 4,884
Depreciation
47,794
46,011
4,897
Feed purchases
23
7
Fertilizer -- lime
--
--
2,594
Freight
--
--
4
Gasoline, fuel, oil
2,326
1,108
1,927
Insurance
2,903
1,699
1,578
Interest
Mortgage
4,840
4,744
4,640
Other
15,239
8,869
7,052
Machine (custom) hire
1,468
--
--
Repairs, maintenance
6,037
1,613
2,047
Seeds -- plants purchased
1,451
283
90
Supplies purchased
1,581
1,736
1,900
Taxes
1,587
742
1,453
Utilities
237
261
466
Veterinarian fees
474
73
95
Farm office supplies/
Farm publications
773
1,846
237
Maintenance
--
--
1,933
Accounting fees
--
--
4,302
Farm business travel
--
--
598
Farm Loss
82,878
66,060
30,929
*390 OPINION Respondent contends that petitioner's farming activities were "not engaged in for profit" within the meaning of section 183. Section 183 allows only certain specified deductions unless the activity is engaged in for profit. Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." An activity engaged in for profit is one in which the taxpayer has an actual and honest, if not reasonable, objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Respondent's determination is presumptively correct, and petitioner bears the burden of proving his profit objective. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The determination of profit objective is a factual one which is resolved based on all surrounding facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); *391 sec. 1.183-2(b), Income Tax Regs. Although the purpose of the test is to determine the taxpayer's subjective intent, greater weight is placed on objective factors than the taxpayer's statement of his intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985); Siegel v. Commissioner, 78 T.C. 659, 699 (1982); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2, Income Tax Regs.
Although section 183 technically does not come into play until after it has been determined that the activity is not engaged in for profit, courts have relied on the factors contained in regulations under section 183 to make the profit objective analysis under section 162. Independent Electric Supply, Inc. v. Commissioner, 781 F.2d 724, 727 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982). These factors are contained in section 1.183-2(b), Income Tax Regs. No single factor is determinative. *392 All factors must be considered together. Independent Electric Supply Inc. v. Commissioner, supra.
The first factor is the manner in which the taxpayer carries on the activity. Conducting the activity in a businesslike manner and maintaining accurate books and records is one indication of profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner did not keep records, and his only account of his activities is contained in the Schedule F portion of the tax returns he filed for the years in issue. However, adoption of new technologies or a change in operating methods is also an indication of profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. In the present case, petitioner adopted "no till" farming techniques and attempted to decrease the use of strong chemicals. Because petitioner meets one part of the criterion, but not another, this factor is a neutral one. The second factor is expertise of the taxpayer or his advisers. Sec. 1.183-2(b)(2), Income Tax Regs. Although petitioner did not seek advice from farming professionals, he read farming materials and consulted with local farmers. He talked with the local grain elevator *393 operator before having herbicides sprayed on his weeds. He learned what was grown in the area and planted accordingly. He utilized the experiences he had gained from spending much of his childhood on a farm. Finally, he had his soil tested, and when he received the results of soil tests, he followed the recommendations. Because of the advice petitioner sought, coupled with his own experiences, the second factor weighs in his favor. The third factor is time and effort expended by the taxpayer in carrying out the activity. Sec. 1.183-2(b)(3), Income Tax Regs. If the activity does not have substantial personal or recreational aspects, there is a stronger argument that the taxpayer's objective was to derive a profit. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner devoted all of his free time to his farm. His neighbors testified that every time they saw him he was doing work around the farm. Even though petitioner had a full-time job, the record indicates that after he retired, he planned to operate the farm on a full-time basis. Petitioner did not hire part-time help to assist him in his absences; rather, he structured his flight time in order to accomplish as much as possible *394 when he was on the farm. Accordingly, this factor weighs in petitioner's favor. The fourth element is an expectation that assets used will appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. Because petitioner did not address the fourth element, it must weigh against him. The fifth element is the success of the taxpayer in carrying on other similar or dissimilar activities. Sec. 1.183-2(b)(5), Income Tax Regs. Because petitioner has not engaged in any other business activities, this element is neutral. The sixth element is the taxpayer's history of income or losses with respect to the activity. A series of losses during the initial period or losses due to circumstances beyond the taxpayer's control do not necessarily indicate that the taxpayer has not engaged in the activity to make a profit. Sec. 1.183-2(b)(6), Income Tax Regs. Petitioner began his activity in 1985 and incurred losses every year thereafter. Petitioner's losses in the early years can be attributed to the costs of starting the enterprise. His losses in later years were due to recurring problems with weeds. Although petitioner's response to the weeds varied, his lack of success in eliminating them *395 did not. Because petitioner attempted to correct the problem with crop rotation and herbicides, this factor will not weigh against petitioner. The seventh element is the amount of occasional profits, if any, which are earned. Sec. 1.183-2(b)(7), Income Tax Regs. Most of petitioner's farming revenues in the years at issue came from payments from ASCS. The farming revenues were small relative to the farming expenses. Thus, this factor weighs against petitioner. The eighth element is the financial status of the taxpayer. Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioner earned a substantial income from his job as a cargo pilot. However, unlike other cases where the taxpayer had a continuing stream of income (such as from a trust), in the instant case petitioner soon planned to retire. See Estate of Power v. Commissioner, T.C. Memo. 1983-552, affd. 736 F.2d 826 (1st Cir. 1984). With his retirement, his income stream from his job as a pilot would end. Because petitioner would soon lose his steady income, *396 he would need to support himself with income from the farm. Thus, this factor weighs in petitioner's favor. The final element is aspects of personal pleasure or recreation. An activity is not discounted as being engaged in for profit merely because the taxpayer has motivations other than making a profit. Sec. 1.183-2(b)(9), Income Tax Regs. In the instant case, petitioner purchased a farm 3 miles from the one owned by his parents. We can assume that part of petitioner's motivation in buying this particular farm came from a desire to be close to his parents. However, this is the only indication that petitioner purchased the farm for personal reasons. When petitioner was on the farm, he spent his time performing various chores. His activities indicate that he was trying to get as much work as possible accomplished in the limited time he had. He was not simply a weekend farmer. He did most of the farm labor himself. Although petitioner may have derived some personal satisfaction, the record does not support a finding that recreation was more than a negligible part of his motivation for working the farm. Hence, this factor weighs in petitioner's favor. On the whole, petitioner's *397 activities support the conclusion that he engaged in his farming venture with a profit objective. He used innovative farming techniques. He had spent substantial periods of his childhood on a farm, and was familiar with farming techniques. He solicited advice and planted crops in accordance with growing practices in the area. He spent all of his nonflight time on his farm. His losses were due to startup costs and circumstances beyond his control. He earned a substantial outside income but expected it to cease in the near future. Finally, he farmed only incidentally for personal pleasure. Petitioner's activities may not have been reasonably calculated to earn a profit, but we believe that he had an actual and honest objective to realize a profit. Accordingly, we hold for petitioner. Respondent determined additions to tax for negligence, late filing, and substantial understatement of tax. We have held that additions to tax pursuant to section 6653(a) are appropriate when a return is filed late. Emmons v. Commissioner, 92 T.C. 342, 348 (1989), affd. on other grounds 898 F.2d 50 (5th Cir. 1990). In Emmons, we determined *398 that "A delinquent return inherently renders the entire tax an 'underpayment'." Id. at 348-349. We further determined that the taxpayer's late filing caused the underpayment if the taxpayer was negligent. Id. at 349. If the taxpayer fails to present evidence to rebut respondent's showing of negligence, the decision will be in favor of respondent. Id. at 350. In the instant case, petitioner filed his 1987 and 1988 tax returns late. He did not present any evidence showing that his late filings were due to reasonable cause. Further, he did not present any evidence indicating that the understatement of tax for each year at issue, which will be due as a result of petitioner's concessions, was due to reasonable cause. Accordingly, we sustain the additions to tax to the extent applicable. To reflect concessions by petitioner, and the foregoing, Decision will be entered under Rule 155. Footnotes
1. Plus 50 percent of the interest due on the deficiency pursuant to sec. 6653(a)(1)(B).↩
1. In an effort to restore the fertility of the land and decrease soil erosion, ASCS pays individuals not to use their land for farming purposes.↩
1. The majority of these receipts were payments from ASCS.Petitioner did not earn a profit in any of the years he owned his farm. Petitioner lost his farm in a foreclosure in a year subsequent to those in issue.↩