ESTATE OF HERBERT J. MCCLANAHAN, DECEASED, ARLEEN MCCLANAHAN, EXECUTRIX, AND ARLEEN MCCLANAHAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8912-87.          Filed July 24, 1990.

*John M. Youngquist,* for the petitioners.
*James W. Clark,* for the respondent.

JACOBS, *Judge:* Respondent determined the following additions to petitioners' Federal income taxes:

| Year | Sec. 6651(a)(1)[1] | Sec. 6653(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661[2] |
|------|------|------|------|------|------|
| | | | *Additions to tax* | | |
| 1977 | - - - | $406 | - - - | - - - | - - - |
| 1978 | $3,831 | 766 | - - - | - - - | - - - |
| 1979 | 1,337 | 267 | - - - | - - - | - - - |
| 1980 | 5,592 | 1,118 | - - - | - - - | - - - |
| 1981 | - - - | - - - | $448 | * | - - - |
| 1982 | 12,372 | - - - | 2,474 | * | $12,372 |
| 1983 | 1,424 | - - - | 285 | * | 1,424 |

*50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations.

The issues remaining for decision are: (1) Whether petitioners are liable for the section 6653(a) additions to tax for negligence or intentional disregard of rules or regulations; and (2) whether petitioners are liable for the section 6661 additions to tax in 1982 and 1983 for substantial understatements of tax and, if so, whether the additions should be computed using a 25-percent rate.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference.

Petitioner Arleen McClanahan (Mrs. McClanahan) resided in Gridley, California, at the time the petition in this case was filed. Her husband, Herbert J. McClanahan (Mr. McClanahan), died prior to the filing of the petition. Mrs. McClanahan is the personal representative of her husband's estate.

Mr. McClanahan was a certified public accountant. Prior to 1984, he was a sole practitioner, employing several

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

In his notice of deficiency, respondent determined additions to tax under sec. 6651(a)(1). Subsequent to the filing of the petition in this case, respondent concluded that the amounts should not have been determined in his notice of deficiency, but should have been assessed pursuant to the returns delinquently filed by petitioners for all the years in issue. Such amounts were assessed on June 1, 1987. In his answer, respondent conceded that the sec. 6651(a)(1) additions to tax are no longer in dispute as they have been assessed per the returns filed.

[2] In the notice of deficiency, respondent calculated the sec. 6661 addition to tax using a 25-percent rate despite an explanatory paragraph which stated that the rate was 10 percent. We believe that petitioners were on notice that respondent was seeking the higher rate of interest. See sec. 6214(a).

associates and support staff. In 1984, he formed an accounting partnership which included his son-in-law, James Graff, who had worked with him since 1980.

In 1977, Mr. McClanahan was diagnosed as having a heart problem. He continued to work in his accounting practice rather than take corrective measures. In May 1979, he had open-heart surgery; he returned to work in September 1979, although on a reduced schedule. His physical condition deteriorated; he experienced constant stomach and chest pains and lost weight. He continued to meet with clients; on occasions, he prepared income tax returns; he reviewed returns prepared by his associates; and he represented clients before the Internal Revenue Service.

Prior to 1974, Mrs. McClanahan worked in her husband's accounting practice as an office manager and bookkeeper. She received her training for this position from her husband. In 1974, Mrs. McClanahan's daughter replaced her as bookkeeper; however, she continued to work there full time until 1979, and occasionally from 1979 until 1984.

Mrs. McClanahan first became aware that her husband had not filed their Federal income tax return for 1977 when he failed to give her a return to sign on April 15, 1978. When questioned by her, he told her not to worry and that he would take care of it. During the successive tax years in issue, Mrs. McClanahan would, on or about April 15 of each succeeding year, discuss with her husband the fact that their returns had not been filed. Each year he repeatedly told her not to worry and that he would take care of it.

On April 25, 1984, Mr. McClanahan was contacted at his office by one of respondent's special agents regarding his failure to file Federal income tax returns for 1977 through 1983. At that meeting, he agreed to file delinquent returns and to produce his records at a meeting scheduled for June 1, 1984. At Mr. McClanahan's request, the agent agreed to refrain from contacting third parties provided the returns were produced on June 1, 1984.

Following the April 25 meeting, Mr. McClanahan assembled the necessary information and prepared the returns for the 7 years in issue. Mrs. McClanahan verified certain computations required by the various tax forms, and the

completed returns were reviewed by Mr. McClanahan's son-in-law.

On June 1, 1984, Mr. McClanahan presented the completed returns to the special agent and discussed various items relating to the tax liabilities set forth therein. The returns reflected liabilities for additions to tax under section 6651(a)(1) and 6651(a)(2) for failure to timely file and failure to timely pay. The amount of tax and additions to tax shown to be due (aggregating $207,414) was paid by check dated July 23, 1984.

Shortly after Mr. McClanahan submitted the completed returns, he went to his doctor complaining about the pain he had been experiencing. He was diagnosed as having esophagus cancer. Surgery was performed in August 1984. Following surgery, Mr. McClanahan was informed that the prognosis was unfavorable. He died in February 1986.

## OPINION

### 1. *Section 6653(a) Additions*

The first issue is whether the delinquent filing of the income tax returns for the 7 years involved was the result of negligence or intentional disregard of rules or regulations pursuant to section 6653(a). Petitioners bear the burden of proof. *Enoch v. Commissioner,* 57 T.C. 781 (1972); Rule 142(a).

Petitioners argue that Mr. McClanahan's debilitating physical health precludes the imposition of the section 6653(a) additions to tax. We disagree. While the record demonstrates that Mr. McClanahan's health was declining, it is also replete with evidence that he continued to work actively in his accounting and tax practice despite his poor health. He was a dedicated professional who treated his clients' interests paramount to his own health. He was capable of attending to his business affairs, and he did just that.

Given Mr. McClanahan's involvement in his accounting practice during the years in issue and his knowledge of Federal taxation, we reject the contention that his failure to file income tax returns on a timely basis for 7 consecutive years was caused by his failing health and open-heart

surgery. The fact that he prepared and submitted delinquent returns in about 5 weeks after he was first contacted by the special agent belies the argument that the failure to timely file was due to his ill health. In view of the broad pattern of petitioners' actions, we believe that their failure to timely file their returns was due to negligence in contravention of their duty and in disregard of respondent's rules and regulations. *Emmons v. Commissioner,* 92 T.C. 342 (1989), affd. 898 F.2d 50 (5th Cir. 1990); *Pritchett v. Commissioner,* 63 T.C. 149, 174 (1974). Thus, respondent was justified in imposing section 6653(a) additions in these circumstances.

Petitioners further argue that the additions to tax under sections 6651(a)(1) and 6653(a) are not "conterminous" and that since petitioners self-assessed the section 6651(a)(1) additions to tax, section 6653(a) should not be applied. This argument is untenable.

It is well settled that additions to tax based on negligence may be imposed even though additions for failure to file returns have also been imposed. *Bagur v. Commissioner,* 66 T.C. 817, 824 (1976); *Robinson's Dairy, Inc. v. Commissioner,* 35 T.C. 601, 608-609 (1961), affd. 302 F.2d 42 (10th Cir. 1962). Negligence is defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C. 168 (1964).

Petitioners, who were skilled individuals, showed a lack of due care and acted unreasonably in failing to file timely income tax returns. They knew of their duty to file; they were capable of fulfilling that duty; but they consciously chose to disregard it.

The "multiple penalty" argument urged by petitioners is flawed; the language of section 6653 indicates otherwise. Under section 6653(d), the addition for failure to file a return under section 6651(a)(1) does not apply where an addition for civil fraud under section 6653(b) is assessed. Section 6653(d) evinces congressional awareness of the interplay between sections 6651(a)(1) and 6653(a) and supports the conclusion that sections 6651(a)(1) and 6653(a) can

overlap. No disharmony exists in assessing additions to tax under both sections.

Finally, we do not accept petitioners' assertion that their negligent actions in failing to timely file returns were expunged by their later act of filing returns which contained self-assessing additions to tax under section 6651(a)(1).

## 2. *Section 6661(a) Additions*

Next, we must decide whether petitioners are liable for an addition to tax under section 6661. Section 6661(a) provides for the addition to tax if there is a substantial understatement of income tax for the taxable year. Section 6661(b) provides that a "substantial understatement" exists if the amount of the understatement of income tax for the year exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. (Here, the understatements of tax for 1982 and 1983 were $49,489 and $5,697, respectively.)

Petitioners interpret section 1.6661-2(d)(2), Income Tax Regs., in a manner which would not make them liable for the section 6661 addition to tax. In relevant part, section 1.6661-2(d)(2), Income Tax Regs., provides:

For purposes of section 6661, the amount of tax shown on the return for the taxable year is determined * * * without regard to any amount of additional tax shown on a return (including an amended return, so-called) filed after the taxpayer is first contacted by the Internal Revenue Service concerning the tax liability of the taxpayer for the taxable year. * * * If no return was filed for the taxable year or if the return (other than a return filed under section 6014) shows no tax due, the amount of tax shown on the return is considered to be zero. * * *

Petitioners argue that since they did not file returns until after they were contacted by a special agent, their late returns, being "original returns," did not show any "additional tax."

Section 6661 was enacted in 1982 to, inter alia, enhance taxpayer compliance and deter taxpayer participation in the "audit lottery" whereby taxpayers take questionable positions on their tax returns in the hope that they will not be audited. S. Rept. 97-494, at 272 (1982). Petitioners assert that section 6661 was intended to apply to "wrong positions taken on filed returns that create substantial tax deficien-

cies and not to "late-filed" returns. We do not agree with petitioners' position.

The compliance purpose of section 6661 is to provide an incentive against taking highly questionable positions which go undetected through either failure to file or failure to provide adequate disclosure on a filed return. In our opinion, a taxpayer who fails to timely file a return until after he is contacted by the Internal Revenue Service is as much a participant in the audit lottery as a taxpayer who submits a timely return containing highly questionable positions.

Our reading of section 6661 and its legislative history convinces us that imposing section 6661 additions to tax against petitioners is not beyond the scope of the statute. Prior to being contacted by the special agent, petitioners had not filed tax returns for the years 1977 through 1983. Consequently, prior to contact, the amount of tax shown on the returns is zero. Sec. 1.6661-2(d)(2), Income Tax Regs. The amount of tax shown on the returns filed subsequent to contact by the Internal Revenue Service is therefore "additional" to the zero amount prior to contact and is plainly within the intendment of section 1.6661-2(d)(2), Income Tax Regs. Accordingly, we hold that section 6661 is applicable where a delinquent return is filed after the taxpayer is first contacted by a representative of the Internal Revenue Service.

We now consider whether it is appropriate to calculate the section 6661 addition to tax using a 25-percent rate. Petitioners argue that to apply section 6661 at the increased rate of 25 percent (instead of 10 percent) is a denial of due process.

In *Pallottini v. Commissioner*, 90 T.C. 498 (1988), we held that the applicable rate under section 6661 is 25 percent for additions assessed after October 21, 1986. In so holding, we concluded that section 8002(c) of the Omnibus Budget Reconciliation Act of 1986 (OBRA 1986), Pub. L. 99-509, 100 Stat. 1874, 1951 which was signed into law on October 21, 1986, controlled over section 1504 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2743 which was signed into law on October 22, 1986.

Petitioners contend that because the October 21, 1986, effective date subjects returns filed prior to that date to the increased rate, the retroactive application of the increased 25-percent rate is unconstitutional. They argue that the effective date provision of the OBRA 1986 amendment to section 6661(a) is a retroactive increase in violation of their due process rights because it punishes conduct which occurred prior to its enactment. We disagree.

Petitioners cite *Untermyer v. Anderson,* 276 U.S. 440 (1928); *United States v. Darusmont,* 449 U.S. 292 (1981); and *Commissioner v. Acker,* 361 U.S. 87 (1959). In *Untermyer,* a newly enacted gift tax statute was found to be unconstitutional insofar as it applied to gifts which were made and completely vested before enactment of the taxing statute. *Untermyer* is of "limited value in assessing the constitutionality of subsequent amendments that bring about certain changes in operation of the tax laws, rather than the creation of a wholly new tax." *United States v. Hemme,* 476 U.S. 558, 568 (1986). This case does not involve the imposition of a "new tax"; therefore, *Untermyer* is inapposite.

In *Darusmont,* the Supreme Court addressed the constitutionality of the 1976 amendments to the alternative minimum tax provisions enacted in 1969. It therein held that the retroactive application of the subsequent amendment to the 1969 enactment did not constitute the imposition of a new tax and, hence, was constitutionally permissible. *United States v. Darusmont, supra* at 299-300.

It is clear that the effective date provision of OBRA 1986 was an amendment to an existing addition to tax rather than the creation of a new addition to tax. As such, the application of the 25-percent rate to section 6661 additions to tax assessed after October 21, 1986, is not constitutionally impermissible.

Petitioners assert that "penal statutes are to be construed strictly," *Commissioner v. Acker,* 361 U.S. at 91, and that they should not be "subjected to a penalty unless the words of the statute plainly impose it." Section 8002, OBRA 1986, 100 Stat. at 1951, provides, in relevant part, as follows:

SEC. 8002. INCREASE IN PENALTY FOR SUBSTANTIAL UNDER-STATEMENT OF LIABILITY.

(a) IN GENERAL.—Subsection (a) of section 6661 of the Internal Revenue Code of 1954 (relating to substantial understatement of liability) is amended to read as follows:

"(a) ADDITION TO TAX.—If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement."

(b) EFFECTIVE DATE.—The amendment made by subsection (a) shall apply to penalties assessed after the date of the enactment of this Act.

Here, section 8002 clearly imposes the increased rate to section 6661 additions to tax assessed after October 21, 1986, the date of enactment. Thus, petitioners' reliance on *Acker* is misplaced.

Petitioners' final argument is that the additions to tax under sections 6651, 6653, and 6661 are not cumulative. They cite no authority for this position. This is not surprising because the provisions of section 6661(b)(3) contradict their argument.

Section 6661(b)(3) coordinates the application of section 6661 with section 6659. Under its provisions, the section 6661 addition to tax is not imposed on that portion of the substantial understatement on which a section 6659 addition is imposed. Except with respect to section 6659, the statutory language of section 6661 does not preclude the assessment of the additions to tax under sections 6651 and 6653 with the section 6661 addition. Moreover, the legislative history of section 6661 recognizes the potential for additional additions to tax to apply.[3]

In sum, we hold that petitioners are liable for the section 6661 additions to tax for 1982 and 1983 in amounts equal to 25 percent of the underpayments of tax for those years.

*Decision will be entered for the respondent.*

---

[3]The conference report relating to sec. 6661 states:

Under present law, penalties may be imposed on the failure to pay certain taxes shown on a return or required to be shown on a return, unless such failure is due to reasonable cause and not willful neglect. If the failure is due to negligence or fraud, additional penalties may apply. [H. Rept. 97-760 (Conf.), at 574 (1982), 1982-2 C.B. 600, 649.]